IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
EL PASO DIVISION

| | | |
|---|---|---|
| PEDRO ZARAGOZA DELGADO and EMA GEORGINA ZARAGOZA-ALDANA,<br>　　Plaintiffs,<br><br>v.<br><br>JORGE HUMBERTO ZARAGOZA, JORGE ANTONIO ZARAGOZA VILLARDAGA, RODRIGO MENDOZA, and MANUEL ESTABAN BALDERAS ROJAS,<br>　　Defendants. | § § § § § § § § § § § § § § § § § | EP-16-CV-136-PRM |

## ORDER GRANTING PLAINTIFFS' MOTION TO REMAND

On this day, the Court considered Plaintiffs Pedro Zaragoza Delgado Jr. ("Pedro Jr.") and Ema Georgina Zaragoza-Aldana's "Motion to Remand" (ECF No. 4) [hereinafter "Motion"], filed on May 4, 2016, Defendants Jorge Humberto Zaragoza ("Jorge Sr."), Jorge Antonio Zaragoza Villardaga ("Jorge Jr."), Rodrigo Mendoza ("Rodrigo"), and Manuel Esteban's ("Manuel") "Response to Plaintiffs' Motion to Remand" (ECF No. 5) [hereinafter "Response"], filed on May 10, 2016, and Plaintiffs' "Reply to Defendants' Response to Motion to Remand"

(ECF No. 7) [hereinafter "Reply"], filed on May 16, 2016, in the above-captioned cause. After due consideration, the Court is of the opinion that Plaintiffs' Motion should be granted for the reasons that follow.

I. FACTUAL AND PROCEDURAL BACKGROUND

Pedro Zaragoza Sr. ("Pedro Sr.") and Jorge Zaragoza Sr. ("Zaragoza brothers") are brothers who jointly own and operate several businesses, including a dairy business, in Mexico. Pet. 3. Pedro Jr. and Jorge Jr. work for and are associated with their fathers' respective businesses. *Id.* Rodrigo and Manuel are former employees of the Zaragoza brothers who are now employed by Jorge Sr. and Jorge Jr. *Id.* at 3–4.

The Zaragoza brothers have unsuccessfully attempted to negotiate a division of their family businesses and assets since approximately 2009, resulting in over one hundred civil and criminal actions in Mexico. *Id.* at 4.

Plaintiffs allege that "[b]eginning on November 2, 2012, [Jorge Sr., Jorge Jr., Rodrigo, Manuel], and others, forcibly entered several of the dairies through Mexico in an attempt to take by force the operations, personnel, and . . . money from the successful dairies." Pet. 4. Then, in

2

October 2015, unbeknownst to Pedro Jr. or his father, Defendants allegedly "secretly presented a false criminal complaint in Mexico," claiming that Pedro Sr. and Pedro Jr. had committed extortion. *Id.* at 5.

Throughout November and December 2015, the Zaragoza brothers "continued to attempt to resolve their disputes and reach an agreement on the division of their businesses and assets," but were unsuccessful. *Id.* Shortly after these unsuccessful negotiations, Plaintiffs allege that Defendants used false pretenses to lure Pedro Jr. to Mexico City, Mexico. *Id.* Once in Mexico, Pedro Jr. was allegedly arrested by Mexican agents based on a false criminal complaint, which was in turn based on Rodrigo's and Manuel's perjured testimony and false accusations. *Id.* at 5–6. Plaintiffs allege that Mexican authorities interrogated Pedro Jr. for several hours and placed him in a Mexican prison. *Id.* at 6.

The day after Pedro Jr. was falsely incarcerated, Defendants' agent and unnamed conspirator called Pedro Jr.'s wife, Ema, asserting that Pedro Jr. would not be harmed and would be released from prison

only if Pedro Sr. acquiesced to Jorge Sr.'s demands, which were in excess of two million dollars. *Id.* at 7.

Plaintiffs further allege that, while Pedro Jr. was incarcerated, Jorge Sr. "engaged in a false media campaign and published an opinion article" in a Mexican newspaper that contained false, libelous, and slanderous statements about Pedro Jr. *Id.* at 7–8.

Jorge Sr. and his agents continued to make their demands while Pedro Jr. was in prison. *Id.* at 8. Then, after fifty-six days of incarceration, Pedro Jr. was released after a Mexican judge found that Pedro Jr. did not commit the crime of extortion as falsely alleged by Jorge Sr., Jorge Jr., Rodrigo, and Manuel. *Id.* at 9. The judge also found that Jorge Sr. and Jorge Jr.'s allegations in the criminal complaint were lies and that the testimony of Rodrigo and Manuel was false. *Id.*

As a result, Plaintiffs brought the following claims against Defendants in Texas state court: (1) fraud; (2) civil conspiracy; (3) false imprisonment; (4) malicious prosecution; (5) defamation; and (6) intentional infliction of emotional distress. *Id.* at 16–22.

Defendants subsequently removed this action to federal court on the basis of federal question jurisdiction. Def.'s Notice of Removal, Apr. 22, 2016, ECF No. 1. Specifically, Defendants allege that federal question jurisdiction exists because the tort claims "include principles of international law and international relations, which form part of the federal common law and present[ ] a federal question." *Id.* at 2. Plaintiffs move to remand on the basis that no federal question jurisdiction exists. Mot. 1–2.

## II. LEGAL STANDARD

"Only state-court actions that originally could have been filed in federal court may be removed to federal court by the defendant." *Caterpillar Inc. v. Williams*, 482 U.S. 386, 392 (1987). And, "[a]bsent diversity jurisdiction, federal-question jurisdiction is required."[1] *Id.* "The presence or absence of federal-question jurisdiction is governed by the 'well-pleaded complaint rule,' which provides that federal jurisdiction exists only when a federal question is presented on the face of the plaintiff's properly pleaded complaint." *Id.*; *Medina v. Ramsey Steel Co., Inc.*, 238 F.3d 674, 680 (5th Cir. 2001). "The complaint must

---

[1] In this case, Plaintiffs and Defendants are citizens of Texas; thus, there is no diversity jurisdiction.

state a cause of action created by federal law or it must assert a state-law cause of action requiring the resolution of a substantial question of federal law." *Torres v. S. Peru Copper Corp.*, 113 F.3d 540, 542 (5th Cir. 1997); *see also Franchise Tax Bd. of State of Cal. v. Constr. Laborers Vacation Trust for S. Ca.*, 463 U.S. 1, 13 (1983) ("Even though state law creates [a] cause of action, [the] case may still arise under the laws of the United States if a well-pleaded complaint established that [the] right to relief under state law requires resolution of a substantial question of federal law in dispute between the parties.").

Pursuant to 28 U.S.C. § 1447(c), if a district court determines "at any time before final judgment . . . that [it] lacks subject matter jurisdiction, the case shall be remanded." It is, moreover, the removing party that "bears the burden of establishing that federal jurisdiction [lies]." *De Aguilar v. Boeing Co.*, 47 F.3d 1404, 1408 (5th Cir. 1995). Federal courts strictly construe the removal statutes, "and any doubt about the propriety of removal must be resolved in favor of remand." *Gasch v. Hartford Acc. & Indem. Co.*, 491 F.3d 278, 281–82 (5th Cir. 2007).

Finally, pursuant to 28 U.S.C. § 1447(c), if a federal district court issues an order remanding a case, the court "may require payment of just costs and any actual expenses, including attorney fees, incurred as a result of the removal." "Absent unusual circumstances, courts may award attorney's fees under § 1447(c) only where the removing party lacked an objectively reasonable basis for seeking removal." *Martin v. Franklin Capital Corp.*, 546 U.S. 132, 141 (2005). "To determine objective reasonableness, [the Court] must examine, *inter alia*, the relevant case law on subject-matter jurisdiction at the time of removal." *CamSoft Data Sys., Inc. v. S. Elec. Supply, Inc.*, No. 15-30133, 2015 WL 5530262, at*4 (5th Cir. Sept. 21, 2015) (internal quotation marks omitted).

## III. ANALYSIS

### A. Remand

All of Plaintiffs' claims against Defendants are state-law claims. *See* Pet. 16–22. Consequently, these claims do not present a federal question unless their resolution turns on a substantial question of federal law. *See Franchise Tax Bd.*, 463 U.S. at 13. Defendants allege that Plaintiffs claims implicate the federal common law of foreign

7

relations[2] and therefore turn on a substantial question of federal law. Resp. 6–7. The Court finds that Plaintiffs' suit does not involve the federal common law of foreign relations, thus the Court does not have federal question jurisdiction to adjudicate Plaintiffs' claims.

The Fifth Circuit, in *Torres*, held that a "complaint raises substantial questions of federal common law" when it implicates "important foreign policy concerns." 113 F.3d at 543. The Fifth Circuit found that these important foreign policy concerns, and thus federal question jurisdiction, were present where more than 700 Peruvian plaintiffs sued a Peruvian mining company in Texas state court. *Id.* at

---

[2] The Court notes that there is a circuit split regarding whether the federal common law of foreign relations is an appropriate basis for federal question jurisdiction. *Compare Torres*, 113 F.3d at 543 (holding that federal question jurisdiction existed where plaintiff's suit, although rooted in state-law claims, implicated foreign policy concerns) *with Patrickson v. Dole Food Co.*, 251 F.3d 795, 803–04 (9th Cir. 2001) ("It may well be that our foreign relations will be implicated by the pendency of a lawsuit on a subject that affects that government's sovereign interests . . . . But we see no logical connection between such an effect and the assertion of federal-question jurisdiction. That the case is litigated in federal court, rather than state court, will not reduce the impact of the case on the foreign government.") (finding no federal question jurisdiction). Nonetheless, as discussed *infra*, the Fifth Circuit has determined that, in some instances, a plaintiff's state-law claims may invoke the federal common law of foreign relations and thereby present a federal question. *Torres*, 113 F.3d at 543. Hence, the Court will apply the Fifth Circuit's holding in *Torres*.

541. The state of Peru "protested the lawsuit by filing a letter with the State Department and by submitting an amicus brief to [the] court." *Id.* at 542. The Fifth Circuit noted while Peru's opposition to the suit alone did not create a question of federal law, its "vigorousness in opposing the action" alerted the Fifth Circuit to important foreign policy implications. *Id.* at 542–543.

Namely, the Fifth Circuit considered the fact that the Peruvian government substantially participated in the actions for which the defendants were being sued because the government owned the land on which the defendant operated, owned the minerals that the defendant extracted, owned the refinery that defendant owned prior to the defendant, and extensively regulated the mining industry. *Id.* at 543. Moreover, the Court also highlighted the fact that "[t]he mining industry in Peru, of which [the defendant was] the largest company, [was] critical to that country's economy, contributing up to 50% of its export income." *Id.* Thus the *Torres* court determined that the action struck "not only at vital economic interests but also at Peru's sovereign interests by seeking damages for activities and policies in which the government actively ha[d] been engaged." *Id.*

Accordingly, the Fifth Circuit has held that "important foreign policy concerns" are present where a suit significantly implicates a foreign country's sovereign and economic interests. *See id.* Since *Torres*, however, the Fifth Circuit has also held that "[f]ederal jurisdiction based on the common law of foreign relations is limited in scope." *Espinola-E v. Coahoma Chemical Co.*, 248 F.3d 1138, 2001 WL 85834, at *1 (5th Cir. 2001); *see also Delgado v. Shell Oil Co.*, 890 F. Supp. 1324, 1348 (S.D. Tex. 1995), *aff'd*, 231 F.3d 165 (5th Cir. 2000) ("[N]ot every claim implicating the international law of foreign relations will give rise to federal question jurisdiction.").

At the outset, the Court notes that, unlike in *Torres*, Mexico has not indicated its position regarding the instant action. *See Pacheco de Perez v. AT&T Co.*, 139 F.3d 1368, 1378 (11th Cir. 1998) (similarly distinguishing the facts of its case from *Torres* where plaintiffs were injured in a pipeline explosion in Venezuela). "Without such an indication from the foreign nation, [the Court] is reluctant to find that the plaintiffs' private cause of action sounding in [Texas] tort law implicates important foreign policy on the face of the plaintiffs' pleadings." *See id.; see also Espinola-E*, 2001 WL 85834, at *1 ("None of

the countries is a party to, or has protested, these particular lawsuits. Federal question jurisdiction does not exist here.").

This case is also distinguishable from *Torres* because neither Mexico's sovereign or economic interests are implicated by Plaintiffs' suit.

First, Mexico's sovereign interests are in no manner implicated. Defendants claim that "it is evident that [Plaintiffs] are challenging or will be challenging Pedro Jr.'s detainment and incarceration in Mexico, which . . . affects international law and the relationship between the United States and Mexico." Resp. 8. Specifically, Defendants argue that Plaintiffs dispute "the validity of the Mexican judiciary's actions" regarding the extortion complaint. *Id.* Defendants are alluding to Plaintiffs' malicious prosecution and false imprisonment claims.

Yet, Plaintiffs are not challenging the actions of the Mexican judiciary or Mexican authorities, but rather are challenging the *Defendants'* actions in falsely and maliciously utilizing the Mexican criminal justice system. Pet. 18–20; Reply 4 ("[I]t is obvious that Plaintiffs are not seeking to hold the Mexican government or judiciary liable . . . . The only actions at issue in this case are the private,

wrongful actions and omissions of Defendants which resulted in injury to Plaintiffs."). Thus, Plaintiffs are not challenging the validity of Pedro Jr.'s incarceration, as the Mexican judiciary has already determined that Pedro Jr. was not guilty of the crime for which he was incarcerated and released him; instead, Plaintiffs are challenging the Defendants' actions in bringing about that incarceration. *See* Reply 4. Plaintiffs contend they "are not seeking the enforcement or invalidation of Mexico's laws" and are not challenging any "Mexican laws, decrees, or judgments." Mot. 8. Therefore, Mexico's sovereign interests are not affected by Plaintiffs' suit, and Plaintiffs suit does not invoke the federal common law of foreign relations. *See Espinola-E*, 2001 WL 85834, at *1 (similarly concluding that plaintiffs' suits concerning certain foreign countries' use of pesticides on bananas, "an important segment of the economy in all of the countries at issue in [plaintiffs' suits]" did not implicate the federal common law of foreign relations because "these suits [did] not pose a threat to foreign sovereignty).

Second, Plaintiffs' suit does not implicate Mexico's economic interests in any manner—nor do Defendants argue that it does.

Defendants nevertheless assert that Plaintiffs' suit implicates international relations because the suit necessarily requires a court to determine (1) whether a United States citizen can be sued in the United States for a tort they allegedly commit in a foreign country and (2) whether Pedro Jr.'s arrest and incarceration were unlawful and whether Mexican or United States law should be applied to make such a determination. Neither of these issues concern federal law or international relations.

The first issue—whether a United States citizen can be sued in the United States for a tort allegedly committed outside of the United States—is not a question that concerns federal law or the federal law of foreign relations. State courts often adjudicate actions brought against United States citizens for torts committed in foreign countries. *See, e.g., Ford Motor Co. v. Aguiniga et al.*, 9 S.W.3d 252 (Tex. App.—San Antonio 1999, pet. denied); *Cortez v. Palace Resorts, Inc.*, 123 So.3d 1085 (Fla. 2013) (plaintiff, a United States citizen brought an action against a United States corporation for a sexual assault that occurred in Mexico); *Bell Helicopter Textron, Inc., v. Arteaga*, 113 A.3d 1045 (Del. 2015) (Mexican representatives of Mexican citizens who were killed in a

helicopter crash in Mexico brought suit against an American corporation); *Griffen v. State of Iowa*, 767 NW.2d 633 (Iowa 2009) (holding that the Iowa Tort Claims Act allows claims for torts committed in foreign countries). In fact, Texas state law explicitly provides that, under specified conditions, an individual may bring an action for personal injury damages in Texas although the wrongful act causing the injury took place in a foreign country. Tex. Civ. Prac. & Rem. Code Ann. § 71.031.

The second issue—whether Mexican or American law applies to Plaintiffs claims—as Plaintiffs correctly recognize, involves a choice-of-law question, which state courts also routinely handle and which also does not encompass federal law. *See Klaxton Co. v. Stentor Electric Mfg. Co.*, 313 U.S. 487, 496–97 (1941) ("We are of opinion that prohibition declared in *Erie Rairlod v. Tompkins*, against such independent determinations by the federal courts extends to the field of conflict of laws. The conflict of law rules to be applied by the federal court in [a state] must conform to those prevailing in [that] state['s] courts . . . . It is not for the federal courts to thwart such local policies by enforcing an independent 'general law' of conflict of laws. Subject

only to review by [the Supreme] Court, on any federal question that may arise, [states are] free to determine whether a given matter is to be governed by the law of the forum or some other law.") (internal citations omitted).

Thus, while the resolution of Plaintiffs' malicious prosecution and false imprisonment claims may require determining whether Mexican or American law should apply, a state court is perfectly capable of making such a determination. *See id.*; *see also Gutierrez v. Collins*, 583 S.W.2d 312, 318 (Tex. 1979) (holding that the "most significant relationship test" as espoused in the Restatement of Conflicts governs conflicts cases sounding in tort in case where automobile collision occurred in Mexico). Furthermore, even if a court were to determine that Mexican law applies, application of such foreign law does not present federal question jurisdiction, nor are state courts precluded from applying foreign law. *See Unión De Pasteurizadores De Juárez Sociedad Anónima De Capital Variable v. Fuentes*, No. 16-CV-137-KC, 2016 WL 3512272, at *6 (W.D. Tex. 2016) [hereinafter "UPJ case"][3]

---

[3] The UPJ case involved some of the same parties as the present suit and was also removed from state court but was assigned to another judge in the Western District of Texas, El Paso Division. *Fuentes*, 2016

15

("similarly holding that "even if . . . th[e] case will necessarily involve the interpretation of Mexican law, the fact that a case involves the interpretation of foreign law is not a basis for federal jurisdiction") (citing *In re Hellas Telecomm. (Luxembourg) II SCA*, 535 B.R. 543, 565 (Bankr. S.D.N.Y. 2015) ("explaining that the court must look to federal law to determine if it has subject matter jurisdiction, even if the applicable substantive law at issue is foreign law")). "Indeed, Defendants have pointed to no case law—and the Court has found none—holding that a case arises under federal law merely because it involves the interpretation of foreign law." *See id.*

Ultimately, the Court can discern no federal question on the face of Plaintiffs' well-pleaded complaint. Plaintiffs bring state-law claims against Defendants for torts that partly occurred in the United States

---

WL 3512272, at *1. In the UPJ case, UPJ—the Zaragoza Brothers' joint company—brought suit against Jorge Sr., Rodrigo, and another party, for conversion and sought an injunction after UPJ was allegedly unable to comply with a Mexican tax audit because of the defendants' actions. *Id.* Plaintiff in the UPJ case similarly sought remand, and the defendants in that case similarly argued that the district court had federal question jurisdiction because the plaintiff's suit invoked the federal common law of foreign relations. *Id.* at 1, 3–4. The district court in that case similarly determined that federal question jurisdiction was not present and remanded the cause to state court. *Id.* at 6.

and that partly occurred in Mexico. This suit between private parties—family members—does not invoke the federal law of foreign relations. Hence, the Court does not have subject matter jurisdiction and will remand the instant action to state court.

B.  Attorneys' Fees

As noted above, 28 U.S.C. § 1447(c) permits an award of attorney's fees "where the removing party lacked an objectively reasonable basis for seeking removal." *Martin*, 546 U.S. at 141. The Court finds that, given the following circumstances, Defendants' removal was not objectively reasonable: (1) all of Plaintiffs' claims are state law claims; (2) case law in this circuit demonstrates that courts' invocation of federal common law of foreign relations as a basis for federal question jurisdiction is narrow in scope and limited; (3) the Fifth Circuit has held that federal common law of foreign relations is implicated only where a country's economic or sovereign interests are affected by a suit; (4) Defendants' fail to specify any sovereign or economic interests at issue in Plaintiffs' suit. Consequently, the Court determines that Plaintiffs' request for attorney's fees and costs has merit and grants the relief requested.

## IV. CONCLUSION

The Court concludes that no subject matter jurisdiction lies over the above-captioned cause. The Court further concludes that Defendants lacked an objectively reasonable basis for seeking removal in the first place.

Accordingly, **IT IS ORDERED** that Plaintiffs Pedro Zaragoza Delgado and Ema Georgina Zaragoza-Aldana's "Motion to Remand" is **GRANTED**.

**IT IS FURTHER ORDERED** that the above-captioned cause is **REMANDED** to the 41st Judicial District Court of El Paso County, Texas, under Cause Number 2016-DCV-1381.

**IT IS FURTHER ORDERED** that the Court will maintain jurisdiction of the issue of attorney's fees pursuant to 28 U.S.C. § 1447(c).

**IT IS FURTHER ORDERED** that if Plaintiffs Pedro Zaragoza Delgado and Ema Georgina Zaragoza-Aldana wish to be reimbursed for their attorney's fees incurred as a result of Defendants' removal of this case, they shall **FILE** within ten days a motion for attorney's fees pursuant to and in compliance with Local Court Rule CV-7(j).

IT IS FURTHER ORDERED that all pending motions before the Court, if any, are **DENIED AS MOOT**.

SIGNED this _1st_ day of **August, 2016**.

_____
PHILIP R. MARTINEZ
UNITED STATES DISTRICT JUDGE